UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| NICK SACCO and <br> MARCY HOOTNER, <br>     Plaintiffs, <br> v. <br> THE BANK OF VERSAILLES, <br>     Defendant. | Case No. 2:14-cv-04185-NKL |

**ORDER**

Pending before the Court is Defendant Bank of Versailles' motion to dismiss Counts II and III of Plaintiffs' amended complaint for failure to state a claim, Doc. 11. Defendant's motion is granted with respect to Count II. Defendant's motion is denied with respect to Count III.

**I.    Pleading Standard**

Federal Rule of Civil Procedure 12(b)(6) requires the dismissal of a complaint if the plaintiff fails to plead sufficient facts to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). In determining whether the complaint alleges sufficient facts to state a plausible claim to relief, all factual allegations made by the plaintiff are accepted as true. *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007) (noting that legal allegations are not accepted as

1

true).  If the facts in the complaint are sufficient for the court to draw a reasonable inference that the defendant is liable for the alleged misconduct, the claim has facial plausibility and will not be dismissed.  *Iqbal*, 556 U.S. at 678.

**II.    Background**

On November 15, 2013, Plaintiffs Nick Sacco and Marcy Hootner met with Ann Brinson, the Vice President of The Bank of Versailles, regarding a home loan.  In the course of discussing the home loan with Plaintiffs, Brinson asked the couple if they were Jewish.  Plaintiffs confirmed that they are Jewish.  Brinson then described her upbringing around Jewish families in Connecticut and informed Plaintiffs that there are no Jewish temples in that part of Missouri, Judaism is a rare faith in the area, and "it would be impossible to keep kosher in this part of Missouri."  Doc. 5, p. 3.  Brinson concluded the meeting, saying she wanted to speak with another loan officer about Plaintiffs' loan and that she would be in touch.

Brinson did not ask for Plaintiffs' personal identification information to conduct a credit check and never asked Plaintiffs to complete any paperwork associated with securing a loan.  Two hours after Plaintiffs' meeting with Brinson she called Plaintiffs to let them know that the Bank would "not go outside its policy limits at this time."  Doc. 5, p. 4.  Later that day, Plaintiffs sent an email to Brinson asking why the loan was denied without Plaintiffs providing any paperwork and without a credit check.  The email stated that Plaintiffs believed they were denied the home loan due to their Jewish faith.  Defendant never replied to Plaintiffs' email.  Doc. 5, p. 4.

Plaintiffs bring this case alleging violations of the Missouri Human Rights Act (MHRA), the Missouri Merchandising Practices Act (MMPA), the Equal Credit Opportunity Act (ECOA), and the Fair Housing Act (FHA), due to purported religious discrimination by Defendant.  Doc. 5

### III. Discussion

#### A. Count II: MMPA Claim

Defendant argues that Plaintiffs' MMPA claim must be dismissed because The Bank of Versailles is exempt from MMPA claims.  Mo. Rev. Stat. § 407.020.2(2). Plaintiffs state that they intend to dismiss their MMPA claim.  Doc. 13, p. 1.  Plaintiffs' MMPA claim, Count II, is dismissed.

#### B. Count III: ECOA Claim

Defendant contends that Plaintiffs failed to state a claim under the ECOA. Plaintiffs base their claim on the ECOA's prohibition of religious discrimination in lending.  15 U.S.C. § 1691(a)(1).  Defendant argues that this provision only prohibits religious discrimination if an application for credit has actually been made and the lender takes specific adverse action based on that completed application.  As Plaintiffs state that Defendant "never asked Plaintiffs to complete any paperwork that would be associated with securing a loan," Defendant claims Plaintiffs have not alleged a viable EOCA claim. Doc. 5, p. 4.

The ECOA defines "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit

3

limit." 15 U.S.C. § 1691a(b). The Code of Federal Regulations (CFR) further describes who qualifies as an applicant: "Applicant means any person who requests . . . credit from a creditor." 12 C.F.R. 202.2(e). The CFR then notes that an "application" for credit may be made orally or in writing. *Id.* at 202.2(f).

Defendant argues that the Eighth Circuit's opinion in *Hawkins v. Community Bank of Raymore* holds that these regulations impermissibly expand the definition of "applicant" beyond what the plain meaning of the statute would allow. 761 F.3d 937 (8th Cir. 2014). However, *Hawkins* only rejects the CFR's inclusion of guarantors in its definition of "applicant." The Eighth Circuit reasoned that "a guarantor does not request credit and therefore cannot qualify as an applicant under the unambiguous text of the ECOA." *Id.* at 941. But it did not hold that failing to fill out an application for credit precludes a claim under the ECOA. In fact, the Eighth Circuit acknowledged that the applicant's request for credit may or may not be made in writing. *Hawkins*, 761 F.3d at 941. Therefore, the Eighth Circuit's opinion in *Hawkins* does not preclude a finding that Plaintiffs qualify as applicants under the ECOA.

In addition, Plaintiffs cite a District Court opinion from Nevada that classified an individual as an "applicant," even though he never submitted paperwork or completed a loan application for a loan. *See Cragin v. First Federal Sav. & Loan Ass'n*, 498 F.Supp. 379 (D. Nev. 1980). The plaintiff in *Cragin* did nothing more than Plaintiffs did here in conveying their interest in obtaining a home loan to Brinson. The *Cragin* plaintiff told the Assistant Consumer Loan Manager of the bank, "I want to apply for the loan in my own name." *Cragin*, 498 F. Supp. at 381. The Court stated that "[b]ecause plaintiff requested

4

credit from First Federal during his telephone conversation . . . he became an 'applicant.'" *Id.* at 383.

Furthermore, the clear intent of the ECOA is to prevent discrimination in lending. *See* 12 C.F.R. 202.4(b); *see Torgerson v. Wells Fargo Bank South Dakota, N.S.*, 2009 WL 255995, at *13 (D. S.D. 2009). To limit the statute's applicability to situations in which a lender permits an applicant to complete a loan application would be contrary to this intent and cause nonsensical results. Given Plaintiffs' meeting with Brison, the clear purpose of which was to obtain a home loan, Plaintiffs qualify as applicants under the ECOA.

Finally, *Chizh v. Polish & Slavic Federal Credit Union* which is cited by Defendant in support of its argument, is clearly distinguishable. In that case, the court did not classify the plaintiff as an "applicant" because the plaintiff attempted to apply for membership in the credit union, not to apply to obtain a loan. 2011 WL 2680495 (E.D. N.Y. 2011). It does not address whether a formal application for credit must be submitted before the ECOA applies.

Defendant next argues that it did not take any adverse action against Plaintiffs because they received only a verbal statement that if they completed and submitted a loan application, it was unlikely to be approved. Defendant relies on the ECOA's statement that an adverse action must be conveyed in writing unless the lender is small. 15 U.S.C. § 1691(d)(5) (specifying which lenders may take adverse action by verbal statement alone).

Though Plaintiffs did not receive written notice of the adverse action taken by Defendant, Plaintiffs do not argue that the notice they received was defective. Plaintiffs were likely entitled to a written notice of adverse action, but the fact that they did not receive this notice is irrelevant to the question of whether Defendant took adverse action against them. Plaintiffs' complaint alleges that they were denied credit based on Brinson's inquiry about their religious affiliation. The alleged denial of credit constitutes the adverse action. This allegation is sufficient to state a claim under the ECOA.

## IV. Conclusion

For the reasons set forth above, Defendant's motion to dismiss Count II is granted. Defendant's motion to dismiss Count III is denied.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: October 20, 2014
Jefferson City, Missouri

6

Case 2:14-cv-04185-NKL   Document 21   Filed 10/20/14   Page 6 of 6